IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHARL Y. HOLMES, Individually and
as Personal Representative of the Estate
of Kevin W. Holmes, and as Parent Guardian,
and Next Friend of KELSEY ELIZABETH HOLMES
and CONNER HOLMES, Statutory Wrongful
Death Beneficiaries of KEVIN W. HOLMES,
Decedent,

        Plaintiffs,

vs.                                                                         No. CIV 00-1707 LCS/KBM-ACE

SHANE EIDSON, an Individual and
WIN, PLACE & SHOW, INCORPORATED,
a New Mexico Corporation,

        Defendants,

and

UNIONAMERICA INSURANCE CO, LTD.,

        Plaintiff-in-Intervention,

vs.

CHARL Y. HOLMES, Individually and
as Personal Representative of the Estate
of Kevin W. Holmes, and as Parent Guardian,
and Next Friend of KELSEY ELIZABETH HOLMES
and CONNER HOLMES, Statutory Wrongful
Death Beneficiaries of KEVIN W. HOLMES,
Decedent, SHANE EIDSON, an Individual and
WIN, PLACE & SHOW, INCORPORATED,
a New Mexico Corporation,

        Defendants-in-Intervention.

## MEMORANDUM OPINION

**THIS MATTER** is before the Court on Plaintiff-in-Intervention Unionamerica Insurance Co.

Ltd.'s (Unionamerica) Motion for Summary Judgment (Doc. 53), filed on July 31, 2001. The Court, acting upon consent and designation pursuant 28 U.S.C. § 636, and having considered the submissions of counsel, relevant law, and being otherwise fully advised, finds that this Motion is well-taken and should be **GRANTED**.

**I.    Facts.**

The following statement of facts is set forth in the light most favorable to Defendants-in-Intervention, with all reasonable inferences from the record drawn in their favor. *See Clanton v. Cooper*, 129 F. 3d 1147, 1150 (10th Cir.1997).

Plaintiffs are the personal representative and the statutory wrongful death beneficiaries of Kevin W. Holmes. (Comp. ¶ 3.) On the evening of January 8, 2000, and during the early morning hours of January 9, 2000, Mr. Holmes was a patron at the Win, Place and Show Lounge (WPS), in Ruidoso, New Mexico. Fowler Investments, Inc. d/b/a Win, Place and Show owns and carries insurance for WPS. (Compl.-in-Int. ¶ 1.) Defendant Shane Eidson was also a patron of WPS on the night in question. (Comp. ¶ 4.) WPS sold and served alcohol to Eidson while knowing that he was intoxicated. (Comp. ¶ 5.) During the evening at WPS, Eidson engaged in loud, belligerent, violent, and aggressive behavior and had engaged in a least one physical altercation with other patrons. (Comp. ¶ 6.) WPS employees continued to serve alcohol to Eidson, did not restrain him, did not ask him to leave, and did not notify law enforcement of his behavior. (*Id.*)

Near closing time, Mr. Holmes and Defendant Eidson had a conversation at the bar inside WPS. (Comp. ¶ 7.) Based on Eidson's demeanor and actions, it was apparent that some sort of argument or physical altercation would take place. (*Id.*) Although WPS employees were aware of Eidson's reputation for violent and aggressive behavior, they failed to call the police or try to stop

the confrontation. (*Id.*) WPS employees followed Holmes and Eidson outside the bar and encouraged the incident. (*Id.*)

Outside the bar, Eidson committed assault and battery on a third party. (Comp. ¶ 8.) After knocking that person to the ground, Defendants Eidson turned to Holmes, who had his hands at his side in a non-confrontational and non-threatening manner. (*Id.*) Defendant Eidson struck Holmes, causing him to fall to the ground and hit his head on the front of a parked vehicle. (*Id.*) Holmes sustained a head injury and lay bleeding on the street. (*Id.*) Holmes remained conscious for sometime and was transported by ambulance to the hospital where he died a short time later. (*Id.*)

Additional details of the incident are contained in WPS' exhibits submitted in support of its response. At Eidson's preliminary hearing, Ryan Ainsworth testified that Jessica Nosker introduced him to Eidson at WPS at about 11:00 p.m. on the night of January 8, 2000. (Transcript of Preliminary Hearing, WPS Ex. C at 61.) Eidson testified that Nosker and Ainsworth sat next to him at the bar. (Transcript of Preliminary Hearing, WPS Ex. C at 72.) After the couple got up to dance, a man named Teffeteller sat down in Nosker's seat and started a conversation with Eidson. (*Id.*) When Nosker and Ainsworth returned, Teffeteller and Nosker argued over her chair. (*Id.*) Eidson grabbed Teffeteller, pulled him out of the chair, shoved him, and a beer bottle was broken. (Transcript of Preliminary Hearing, WPS Ex. C at 73.)

Later, Holmes, who was a friend of Teffeteller's, told Eidson "let's go" and they walked outside. (Transcript of Preliminary Hearing, WPS Ex. C at 73.) Outside, Holmes and Teffeteller looked at Eidson. (Deposition of Eidson, WPS Ex. C at 131.) Eidson testified that he did not know what Holmes' intentions were when Holmes approached Eidson and that Holmes was looking at Eidson as he approached Eidson. (Eidson Deposition, WPS Ex. B.) Ainsworth testified that Eidson

3

"was basically defending himself from what I could see." (Transcript of Preliminary Hearing, WPS Ex. C, at 68.) Eidson testified at his preliminary hearing that Holmes and Teffeteller were irate and were yelling and that "everyone was cussing at one another . . . and I just wanted them away from me." (WPS Ex. C, at 73.) Eidson felt there was going to be a fight and he "wasn't going to let anyone hit" him. (*Id.*) Eidson testified that "I was threatened so I pushed him away so I could see." (*Id.*) Holmes hit his head on a parked car and later died.

Unionamerica issued a commercial general liability (CGL) policy to Fowler Investments, Inc. d/b/a Win, Place and Show, for the policy period of December 1, 1999 to December 1, 2000, pursuant to Certificate of Insurance No. 10962. (Unionamerica Ex. A; Fowler Supp. Aff. Ex. A.) Edward Dean Fowler is the Secretary/Treasury of Fowler, Incorporated, the entity that owns WPS, and is responsible for purchasing insurance for WPS. (Fowler Statement, Unionamerica Ex. C at 5; 9.)

Until 1999, Mr. Fowler purchased insurance for WPS through the Seeley Insurance Agency. (Fowler Statement, Unionamerica Ex. C at 10.) Accordingly, for the policy period December 1, 1998 to December 1, 1999, Fowler purchased a CGL policy and a liquor liability policy through the Seeley Insurance Agency for WPS. (Fowler Statement, Unionamerica Exs. C at 32; D; E.) In 1999, Fowler began purchasing insurance for WPS from Brian Mirau at the Ruidoso Insurance Agency. (Fowler Statement, Unionamerica Ex. C at 10-11.) Fowler did not specifically discuss assault and battery coverage with Mr. Mirau, but stated that he wanted the "best coverage and the most available coverage [he] could get by any means" or "the best coverage possible." (*Id.* at 28; WPS Ex. D ¶ 11.) Fowler told Mirau that he wanted commercial general liability and liquor liability coverage, (Fowler Statement, Unionamerica Ex. C at 30), and authorized Mirau to contact to the Seeley Agency about

4

prior coverages. (WPS Ex. D ¶ 11.) Fowler did not ask Mirau to evaluate his prior coverages or to recommend any changes. (*Id*. at 32.)

Mr. Fowler generally received insurance policies up to two months after the date they were issued and it was not his practice to read the policies, but to put them in a file. (Fowler Statement, Unionamerica Ex. C at 16-17; WPS Response to Statement of Material Facts ¶ 12.) Fowler had copies of the WPS 1998-1999 CGL and liquor liability policies in his file. (Unionamerica Ex. C at 11, 14; WPS Response to Statement of Material Facts ¶ 11.)

## II.  Procedural Background

On December 4, 2000, Plaintiffs filed their Complaint in this Court, asserting diversity jurisdiction under 28 U.S.C. § 1332, and claiming damages under the New Mexico Wrongful Death Act, NMSA 22-20-01, *et seq*. Plaintiffs allege claims of assault and battery against Eidson, negligence against Eidson and WPS, and liquor license liability against WPS under the provisions of NMSA 41-11-1, *et seq*. (Doc. 1.)

Specifically, the Complaint states that WPS was negligent because it failed to maintain adequate, proper, or necessary security; failed to properly hire, train, monitor, or manage its personnel; failed to contact law enforcement with respect to the incident and the conduct of Eidson; failed to take proper precautions or actions so as to prevent or avoid the incident; condoned ratified, and encouraged the incident and the actions of Eidson; failed to implement necessary, appropriate or reasonable security procedures; and other acts of negligence. (Comp. ¶ 12.) The Complaint further states that WPS sold and served alcohol to Eidson when it was reasonably apparent that he was intoxicated. (Comp. ¶ 13.) Plaintiffs further allege that WPS' actions constituted gross negligence. (*Id*.) Plaintiffs seek compensatory and punitive damages. (Comp. ¶ 9.) WPS answered Plaintiffs'

5

Complaint on January 4, 2001. (Doc. 4.) Defendant Eidson answered on April 9, 2001. (Doc. 22)

Unionamerica filed a Motion to Intervene on June 15, 2001, (Doc. 37), that the Court conditionally granted on July 11, 2001. (Doc. 43.) Unionamerica filed its Complaint-in-Intervention for Declaratory Judgment on July 12, 2001, (Doc. 45), alleging that it issued a commercial general liability (CGL) policy to Fowler Investments, Inc. d/b/a Win, Place & Show for the policy period from December 1, 1999 to December 1, 2000 with the policy limit of $1,000,000.00 for each occurrence. (*Id.*) Unionamerica alleges that the policy excludes expected or intended injury, liquor liability, punitive damages, on injuries arising from assault and battery, and seeks a declaration that the policy does not provide coverage for Plaintiffs' claims. (*Id.*)

WPS answered the Complaint-in-Intervention and counterclaimed against Unionamerica for indemnity and reimbursement of defense costs based on reasonable reliance and negligent misrepresentation on July 27, 2001. (Doc. 51.) Unionamerica answered WPS' counterclaim on August 8, 2001. (Doc. 56.)

On July 31, 2001, Unionamerica filed its Motion for Summary Judgment, asserting that it is entitled to summary judgment declaring that the policy does not cover Plaintiffs' claims against WPS and that, as a result, it owes no duty to indemnify or defend WPS in this litigation. Specifically, Unionamerica argues that it is entitled to summary judgment because Plaintiffs' claims arise from incidents that are excluded from coverage under the policy and WPS had no reasonable expectation that Unionamerica would provide coverage under the circumstances of this case. WPS responds that there are disputed issues of fact as to the contents of the policy, as to whether Holmes tripped and as to whether Eidson acted in self defense, that the assault and battery exclusion should be invalidated under the doctrine of reasonable expectations, and that the policy provides only illusory coverage and,

6

as a result, the Court should give effect to the reasonable expectations of WPS.

**III. Standard**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Serve.*, 165 F. 3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGuire v. Pitkin Co.*, 175 F. 3d 1193, 1201 (10th Cir. 1999).

**IV. Analysis**

**A. Whether Plaintiffs' claims arise from incidents that are excluded from coverage in the Unionamerica CGL policy.**

Unionamerica issued a commercial general liability policy to Fowler Investments, Inc. d/b/a

Win, Place and Show for the policy period of December 1, 1999 to December 1, 2000. (Unionamerica Ex. A; Fowler Supp. Aff. Ex. A.) WPS asserts that the policy submitted by Unionamerica in support of its Motion for Summary Judgment differs from the policy that was issued to WPS. (Fowler Supp. Aff.) Indeed, a comparison of the two submissions reveals that they are printed in different font styles and that the version submitted by Unionamerica does not include the WPS policy certificate number. (Unionamerica Ex. A; Fowler Supp. Aff. Ex. A.) However, both policies are materially identical because they both contain the assault and battery and liquor liability exclusions at issue. (*Id.*) WPS admits that the policy attached to Mr. Fowler's Supplemental Affidavit is a true and correct copy of the Commercial General Liability policy issued to Fowler Investment's, Inc. d/b/a Win, Place & Show for the policy period from December 1, 1999 to December 1, 2001. (Fowler Supp. Aff. ¶ 2.) Accordingly, only the copy of the policy submitted by WPS will be considered.

The commercial general liability policy provides in pertinent part:

SECTION I - COVERAGES

COVERAGE A. BODILY INJURY . . . LIABILITY

1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages . . . to which this insurance does not apply

. . .

2. Exclusions

This insurance does not apply to:

. . .

8

    c.        Liquor Liability

                "Bodily Injury" or "property damage" for which any insured may be held liable by reason of:

                (1) Causing or contributing to the intoxication of any person; . . . or . . .

                (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

                . . .

### EXCLUSIONS

H.        ASSAULT AND BATTERY EXCLUSION

            This insurance does not apply to Bodily Injury or Property Damage arising from:

            A.        Assault and Battery committed by any insured, any employee of any insured, or any other person;

            B.        The failure to suppress or prevent Assault and Battery by any person in A above; or

            C.        Any Assault and Battery resulting from or allegedly related to the negligent hiring, supervision or training of any employee of the insured.

                . . .

K.        ADDITIONAL LIQUOR LIABILITY EXCLUSION

            This insurance does not apply to:

            "Bodily injury" or "Property damage" for which any insured or his indemnitee may be held liable as a result of the consumption of any alcoholic beverages on premises owned, rented, used, or serviced by the insured . . .

(Fowler Supp. Aff. Ex. A 8-9.)

    Unionamerica argues that Plaintiffs' claims for assault and battery and wrongful death are excluded from coverage because they resulted from an assault and battery. Plaintiffs allege in their Complaint that Defendant Eidson struck Holmes and caused him to fall to the ground and hit his head

9

on the front of a parked vehicle. (Comp. ¶ 8.) As a result of the head injury, Holmes died a short time later. (*Id.*) The Unionamerica policy specifically excludes from coverage damages for bodily injury arising from assault and battery committed by any insured, any employee of any insured, or any other person. (Fowler Supp. Aff. Ex. A at 8.) Therefore, Plaintiffs' claims for damages arising from the assault and battery, and resulting death of Holmes, are excluded by the plain meaning of the policy.

The Complaint additionally alleges that WPS was negligent because it failed to maintain adequate, proper, or necessary security; failed to properly hire, train, monitor, or manage its personnel; failed to contact law enforcement with respect to the incident and the conduct of Eidson; failed to take proper precautions or actions so as to prevent or avoid the incident; condoned ratified, and encouraged the incident and the actions of Eidson; failed to implement necessary, appropriate or reasonable security procedures; and other acts of negligence. (Comp. ¶ 12.) The policy excludes from coverage damages caused by the failure to suppress or prevent assault and battery by any person. (Fowler Supp. Aff. Ex. A at 9.) The assault and battery exclusion section also excludes coverage for damages arising from an assault and battery resulting from or allegedly related to the negligent hiring, supervision or training of any employee of the insured. (*Id.*) Plaintiffs' decedent died as the result of an assault and battery. Thus, Plaintiffs' claims the WPS was negligent are excluded by the plain meaning of the assault and battery exclusion.

Finally, the Complaint alleges that WPS sold and served alcohol to Eidson when it was reasonably apparent that he was intoxicated and it is therefore liable for liquor liability under NMSA § 41-11-1, *et seq.* (Comp. ¶ 13.) This statute provides in pertinent part that:

> No civil liability shall be predicated upon the breach of Section

> 60-7A-16 NMSA 1978 by a licensee, except in the case of the licensee who: (1) sold or served alcohol to a person who was intoxicated; (2) it was reasonably apparent to the licensee that the person buying or apparently receiving service of alcoholic beverages was intoxicated; and (3) the licensee knew from the circumstances that the person buying or receiving service of alcoholic beverages was intoxicated.

NMSA § 41-11-1 (A).

The Unionamerica policy contains two liquor liability exclusions. The first liquor liability exclusion specifies that the policy does not cover bodily injury for which any insured may be held liable by reason of causing or contributing to the intoxication of any person or by reason of any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages. (Fowler Supp. Aff. Ex. A at 9.) The second liquor liability exclusion states that this insurance does not apply to bodily injury for which any insured or his indemnitee may be held liable as a result of the consumption of any alcoholic beverages on premises owned, rented, used, or serviced by the insured. (Fowler Supp. Aff. Ex. A at 8.) These exclusions unambiguously eliminate coverage for bodily injury as a result of contributing to an individual's intoxication or violation of a statute regulating the sale of alcoholic beverages. Plaintiffs' liquor liability claims are therefore specifically excluded from coverage by the Unionamerica policy.

Additionally, WPS disputes the fact that Holmes' death resulted from an assault and battery, asserting that there is evidence that Holmes accidently tripped off the curb and hit his head, and that Eidson, by pushing Holmes, was simply defending himself from the aggressive behavior of Holmes. (Mem. in Opp. to Mot. for Summ. J.) WPS does not advance any legal argument in support of these assertions.

There is no basis for these assertions in the record. All the witnesses stated that Eidson

shoved Holmes and caused him to fall to the ground and strike his head on the parked vehicle. WPS relies on Eidson's deposition, and testimony from Eidson's preliminary hearing. (WPS Exs. B; C.) The materials submitted by WPS do not bolster its position. In his deposition, Eidson testified that Eidson did not know what Holmes' intentions were when Holmes approached Eidson and that Holmes was looking at Eidson as he approached Eidson. (WPS Ex. B.) At Eidson's preliminary hearing, Ryan Ainsworth testified that Eidson "was basically defending himself from what I could see." (WPS Ex. C, at 68.) Eidson testified at his preliminary hearing that Holmes and Teffeteller were irate and yelling and that "everyone was cussing at one another . . . and I just wanted them away from me." (WPS Ex. C, at 73.) Eidson felt there was going to be a fight and he "wasn't going to let anyone hit" him. (*Id.*) Eidson testifies that "I was threatened so I pushed him away so I could see."(*Id.*)

No facts support the theory that Holmes accidently tripped and fell. Morever, even if it were assumed that Eidson pushed Holmes in self defense, the assault and battery exclusion would still apply. The policy states that it does not apply to injuries arising from "Assault and Battery committed by any insured, any employee of any insured, or *any other person*." (*emphasis added*.) If Eidson was defending himself from Holmes, then Holmes had engaged in an assault, thereby triggering the exclusion. *See Zelda, Inc. v. Northland Ins. Co.*, 56 Cal.App. 4th 1252, 66 Cal.Rptr. 2d 356 (1997). The broad language of the assault and battery exclusion in the Unionamerica policy would apply even if Eidson had acted in self defense.

The assault and battery exclusion also negates coverage for Plaintiffs' asserted theories of negligence against WPS. The Complaint states that WPS was negligent because it failed to maintain adequate, proper, or necessary security; failed to properly hire, train, monitor, or manage its

personnel; failed to contact law enforcement with respect to the incident and the conduct of Eidson; failed to take proper precautions or actions so as to prevent or avoid the incident; condoned ratified, and encouraged the incident and the actions of Eidson; failed to implement necessary, appropriate or reasonable security procedures; and other acts of negligence. (Comp. ¶ 12.)

The assault and battery exclusion at issue states that the policy does not apply to bodily injury arising from assault and battery committed by any insured, any employee of any insured, or any other person, the failure to suppress or prevent assault and battery by any person, or any assault and battery resulting from or allegedly related to the negligent hiring, supervision or training of any employee of the insured. (Fowler Supp. Aff. Ex. A 8-9.) Such broad language places the focus the type of event giving rise to the injury and excludes coverage when an injury is caused by an assault and battery. *See Century Transit Systems, Inc. v. American Empire Surplus Lines Ins. Co.*, 42 Cal.App.4th 121, 126, 49 Cal.Rptr.2d 567, 570 (1996); *Audubon Indem. Co. v. Patel,* 811 F. Supp. 264, 265 (S. D. Tex.1993); *Terra Nova Ins. Co. v. North Carolina Ted., Inc.*, 715 F. Supp. 688, 691 (E. D. Pa.1989).

For example, in *Cortinez v. Handford* 490 So.2d 626 (La. App.1986), the plaintiff sued the owner of a lounge for damages caused when a male patron assaulted her, knocking her to the floor and fracturing her ankle. *Id.* at 627. The Louisiana appellate court applied a similar assault and battery exclusion, observing that an insurance "policy does not provide coverage for particular acts of negligence but provides coverage for damages arising out of an occurrence. The occurrence which gave rise to the damages here, an assault and battery, is specifically excluded from coverage." *Cortinez*, 490 So.2d at 628.

It is undisputed that Holmes sustained fatal injuries when he was pushed and hit his head

13

during a fight outside the WPS. Plaintiffs' damages arise from an assault and battery. Even if WPS were negligent in some fashion, such negligence would not negate the applicability of the assault and battery exclusion because the death resulted from an assault and battery.

**B.      Whether the assault and battery exclusion should be invalidated under the doctrine of reasonable expectations.**

WPS argues that the assault and battery exclusion in inapplicable based on Mr. Fowler's reasonable expectations. The New Mexico Supreme Court considers the reasonable expectations of the insured when deciding whether an exclusionary clause is effective to nullify coverage under an insurance policy. *Barth v. Coleman*, 118 N.M.1, 5, 879 P.2d 319, 323 (1994). The doctrine of reasonable expectations applies even where the policy language is unambiguous and coverage is excluded under the literal terms of the policy. *Id.* "Often, the dynamics of the insurance transaction, and not the language of the contract itself, determine what the reasonable expectations of the insured are." *Barth*, 118 N.M. at 5 (*citing Collister v. Nationwide Life Ins. Co.*, 479 Pa. 579, 388 A.2d 1346, 1354 (1978)). In order to apply this doctrine, the court must "examine the dynamics of the insurance transaction to ascertain what are the reasonable expectations of the consumer." *Barth*, at 5 (*citing Collister*, 388 A.2d at 1354.)

In *Barth*, a bar patron sued the bar and its owner after she was punched in the nose by another patron. *Barth*, 118 N.M. at 5, 879 P.2d at 323. The owner of the bar had told his insurance agent that he wanted to purchase premises liability insurance for the bar covering assault and battery incidents between patrons. *Id*. at 6. The insurance company, however, issued a premises liability policy that excluded coverage for liability arising from assaults and batteries. *Id.* The bar owner did not receive the policy before the assault and battery incident and there was no realistic way for him

14

receive information about the contents of the insurance policy prior to the incident. *Id.* The New Mexico Supreme Court held that the particular insurance transaction in that case gave rise to a reasonable expectation that the policy would conform to the insurance that the bar owner had requested and that the assault and battery exclusion was inapplicable. *Id.*

The instant case is distinguished from *Barth* in at least two key respects. In *Barth*, the bar owner specifically requested assault and battery coverage. *Barth*, 118 N.M. at 6, 879 P.2d at 324. In this case, Mr. Fowler did not specifically request assault and battery coverage, but merely requested "the best coverage possible" and authorized Mirau to contact Seeley about prior coverages. (WPS Ex. D ¶ 11.) In *Barth*, the bar owner did not receive the policy and was left uninformed about the nature of what he was purchasing. *Barth*, 118 N.M. at 6, 879 P.2d at 324. In this case, Mr. Fowler stated that he generally received insurance policies up to two months after the date they were issued and that it was not his practice to read the policies, but to put them in a file. (Unionamerica Ex. C at 16-17; WPS Response to Statement of Material Facts ¶ 12.) Mr. Fowler had a copy of the WPS 1998-1999 CGL and Liquor Liability policies in his file that contained assault and battery and liquor liability exclusions. (Unionamerica Ex. C at 11, 14; WPS Response to Statement of Material Facts ¶ 11.)

Under the circumstances of this case, the dynamics of the insurance transaction did not give rise to a reasonable expectation that the CGL policy would include coverage for assault and battery. Mr. Fowler never requested coverage for assault and battery, but only the best coverage possible. Fowler also authorized Mirau to contact the Seeley Agency, implying that he wished to purchase the same coverage as contained the 1998-1999 policy, which excluded injuries caused by assault and battery and liquor liability. The particular insurance transaction in this case were insufficient to

15

trigger the doctrine of reasonable expectations. The circumstances would not give rise to reasonable expectations that the Unionamerica CGL policy would cover claims arising from assaults and batteries between patrons of WPS.

**C.      Whether the Unionamerica CGL policy provides only illusory coverage.**

WPS argues that the Unionamerica CGL policy provides only illusory coverage, relying on *Monticello Ins. Co. v. Mike's Speedway Lounge, Inc.*, 949 F. Supp 694, 698 (S. D. Ind. 1996) as the sole legal basis for this argument.

In *Monticello*, a tavern patron was attacked an killed by another patron in an adjacent parking lot. *Id.*, 949 F. Supp. at 696. The personal representative of the decedent sued the bar in state court, and the commercial general liability carrier brought a declaratory judgment action in federal court. *Id.* The federal district court applied Indiana law and found coverage was not excluded by the absolute liquor liability and assault and battery exclusions contained in the commercial general liability policy. *Monticello*, 949 F. Supp. at 703.

*Monticello* is inapplicable to the instant case under the law and the facts. Under Indiana law, an insurance policy provides illusory coverage when a "premium was paid for coverage which would not pay benefits under any reasonably expected set of circumstances." *Monticello*, 949 F. Supp. at 699. However, New Mexico law applies to this diversity case. *See Wood v. Eli Lilly & Co.*, 38 F. 3d 510, 513 (10th Cir. 1994). WPS has not cited, and the Court has not located any comparable New Mexico authority. Thus, *Monticello* is inapplicable to the instant case, where New Mexico law applies.

Moreover, the *Monticello* policy contained an "absolute liquor exclusion" precluding coverage for bodily injury or damage "arising out of or in connection with the manufacturing, selling,

16

distributing, serving or furnishing of any alcoholic beverages." *Monticello*, 949 F. Supp. at 700. The *Monticello* court noted that such broad language might exclude coverage for a claim where a patron slipped and fell after consuming alcoholic beverages. *Id*. The sweeping reach of the *Monticello* policy has been recognized by at least one other court. *See B.L.G. Enterprises, Inc. v. First Financial Ins. Co.*, 334 S.C. 529, 536, 514 S.E.2d 327, 330 (1999) (holding that coverage was not illusory and applying provision excluding coverage for bodily injury "by reason of the selling, serving, or giving of any alcoholic beverage"). The Unionamerica policy does not contain an absolute liquor exclusion, but rather a limited exclusion. There is no indication that the Unionamerica policy would not provide coverage for slip and fall claims and other causes of action. *Monticello* is therefore is inapplicable to this case because the policy at issue in *Monticello* contained different operative language.

**D.      Duty to defend.**

Where there is no coverage under a contract for insurance, there is no duty to defend. *Marshall v. Providence Washington Ins. Co.*, 124 N.M. 381, 383, 951 P.2d 76, 78 (Ct. App. 1997). The policy issued by Unionamerica does not cover Plaintiffs' claims against WPS as alleged in the Complaint. Therefore, Unionamerica does not have a duty to defend WPS in this lawsuit.

Unionamerica has satisfied the initial burden of establishing that no genuine issue exists as to any material fact. *See Celotex*, 477 U.S. at 323. Once the Unionamerica satisfied its initial burden, in order to resist summary judgment, WPS was required to set forth specific facts showing there is a genuine issue for trial as to a material matter. *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586. WPS failed to produce specific, material facts negating the Unionamerica's showing. *See McGuire*, 175 F. 3d at 1201. WPS has failed to demonstrate a genuine issue for trial

17

on a material matter. Therefore, Unionamerica's motion for summary judgment should be granted.

**V.  Conclusion.**

Upon review of the evidence presented on this Motion for Summary Judgment, the Court has determined that Unionamerica's Motion for Summary Judgment (Doc. 53), filed on July 31, 2001, should be **GRANTED**. Plaintiff-in-Intervention Unionamerica Insurance Co. Ltd. is entitled to summary judgment declaring that the policy does not cover Plaintiffs' claims against WPS and that, as a result, it owes no duty to indemnify or defend WPS in this litigation.

**AN ORDER CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**